# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KATHERINE O'SHEA, BRIAN POSNER AND TOM BACON on behalf of themselves, and all other plaintiffs similarly situated, known and unknown, <br><br> Plaintiffs, <br><br> v. <br><br> MAPLEBEAR, INC. D/B/A INSTACART AND "DOES" 1 THROUGH 100, INCLUSIVE, <br><br> Defendants. | NO. 19-CV- <br><br> **District Judge** <br><br> Magistrate Judge <br><br> ***JURY DEMAND*** |

## COMPLAINT

NOW COME Plaintiffs, **KATHERINE O'SHEA, BRIAN POSNER AND TOM BACON,** on behalf of themselves and all other Plaintiffs similarly situated, by and through their attorneys, ROBERT S. ARNS, JONATHAN E. DAVIS, KEVIN M. OSBORNE, JULIE C. ERICKSON AND SHOUNAK S. DHARAP of THE ARNS LAW FIRM of SAN FRANCISCO, CALIFORNIA AND JOHN W. BILLHORN AND SAMUEL D. ENGELSON of BILLHORN LAW FIRM AS LOCAL COUNSEL, and for their Complaint against Defendants, **MAPLEBEAR, INC. D/B/A INSTACART AND "DOES" 1 THROUGH 100, INCLUSIVE,** state as follows:

## I.  NATURE OF ACTION

1.  This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201, et seq., the Illinois Minimum Wage Law, 820 ILCS §105/1 et seq, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*,

## II.  JURISDICTION AND VENUE

2.  This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and section 16(b) of the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 216(b).

3. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' Illinois wage and hour and associated claims because the claims originate from a common nucleus of operative fact.

4. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

    a. <u>Complete Diversity</u>: As alleged herein, Instacart is a Delaware corporation with its principal place of business at 50 Beale Street, San Francisco, CA. Plaintiffs are residents of Illinois and the proposed class consists of thousands of workers in Illinois. This satisfies the requirement that all plaintiffs and all defendants are citizens of different states.

    b. <u>Amount in Controversy Exceeds $75,000</u>: The amount in controversy in the underlying dispute exceeds $75,000. Plaintiffs believe there to be thousands of members of the proposed class. Plaintiffs allege that they and the proposed class have been regularly denied proper minimum wage and overtime during the class period.In addition to the non-productive time and overtime wages, Plaintiffs also seek expense reimbursement; restitution and disgorgement; various penalties; an order enjoining Instacart from continuing to engage in the alleged conduct described in the Complaint; and other further relief as the Court deems just and proper. Given these requests for relief, the amount in controversy far exceeds $75,000 in the aggregate, and this Court has jurisdiction.

## III. <u>THE PARTIES</u>

5. Plaintiff O'Shea is a resident of Chicago, Illinois. Defendants have continuously employed O'Shea as a Shopper from approximately August 5, 2015 to the present. During the course of her employment by Defendants, O'Shea incurred expenses related to her work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which she was not reimbursed. O'Shea also worked in excess of forty hours per week but was not compensated at the required overtime wage rates. O'Shea regularly was not paid at or above the minimum wage for the applicable jurisdiction for the

hours she worked.

6.     Plaintiff Posner is a resident of Chicago, Illinois. Defendants have continuously employed Posner as a Shopper from approximately August 2019 to the present.  During the course of his employment by Defendants, Posner incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed. Posner also worked in excess of forty hours per week but was not compensated at the required overtime wage rates. Posner regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours he worked.

7.     Plaintiff Bacon is a resident of Chicago, Illinois. Defendants have continuously employed Bacon as a Shopper from approximately October 2018 to the present.  During the course of his employment by Defendants, Bacon incurred expenses related to his work, including vehicle maintenance, fuel, insurance, and other driving related expenses, for which he was not reimbursed. Bacon also worked in excess of forty hours per week but was not compensated at the required overtime wage rates. Bacon regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours he worked.

8.     Defendant Instacart is a Delaware corporation with its principal place of business located at 50 Beale St. Suite #600 in San Francisco, California.  Instacart maintains substantial ongoing business operations throughout the United States, including San Francisco County, and is in the business of providing online grocery shopping and delivery service.

9.     The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiffs who sue such Defendants by use of such fictitious names. Plaintiffs will amend this complaint to add the true names when they are ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is

legally responsible for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

## IV.    STATUTORY VIOLATIONS

**Collective Action Under The Fair Labor Standards Act**

10.    Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiffs as an opt-in representative or collective action, on behalf of himself and other Plaintiffs similarly situated who have been damaged by Defendants' failure to comply with 29 U.S.C. §201 *et seq.* Count II alleges a willful violation of the FLSA and seeks an additional third year of limitations. Count III seeks liquidated damages under the Fair Labor Standards Act, Section 260.

**Illinois Wage Payment and Collection Act**

11.    Pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS §115/1 *et seq.*, Count II of this action is brought by Plaintiffs to recover final compensation of wages and other compensation earned from the Defendants. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count. The claims asserted by Plaintiffs herein under the IWPCA are proper for certification under Federal Rule of Civil Procedure 23.

**Illinois Minimum Wage Law**

12.    Pursuant to the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq.*, Count III of this action is brought by Plaintiffs to recover unpaid back wages earned on or before the date three (3) years prior to the filing of this action.  Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count. The claims asserted by Plaintiffs herein under the IMWL are proper for certification under Federal Rule of Civil Procedure 23.

**Cook County Minimum Wage Ordinance**

13.   Pursuant to the Cook County Minimum Wage Ordinance ("CCMWO"), Municipal Code of Cook County § 42-11, Count IV of this action is brought by Plaintiffs to recover unpaid back wages earned on or before the date three (3) years prior to the filing of

this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count.

### Chicago Minimum Wage Ordinance

14.     Pursuant to the Chicago Minimum Wage Ordinance ("CMWO"), § 1-24-10 of the Municipal Code of Chicago, Count V of this action is brought by Plaintiffs to recover unpaid back wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count.

### Unfair and Deceptive Business Practices

15.     Pursuant to 815 ILCS § 510/1, *et seq*, Count VI of this action is brought by Plaintiffs to recover damages available by law. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count.

### Tortious Interference with Prospective Economic Advantage

16.     Pursuant to Illinois Common Law, Count VII of this action is brought by Plaintiffs to recover damages available by law. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count.

### Conversion

17.     Pursuant to Illinois Common Law, Count VIII of this action is brought by Plaintiffs to recover damages available by law. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count.

### Fraud and Intentional Misrepresentation

18.     Pursuant to Illinois Common Law, Count IX of this action is brought by Plaintiffs to recover damages available by law. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count.

## V.    INTRODUCTION

19.     KATHERINE O'SHEA, BRIAN POSNER, and TOM BACON individually and on behalf of similarly situated individuals, ("Plaintiffs") bring this class action against

Defendants MAPLEBEAR, INC., doing business as INSTACART ("Instacart"), (collectively "Defendants"), and alleges, upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, as follows:

20.    Plaintiffs bring this action to obtain damages and restitution, as well as declaratory, injunctive, and other relief, individually and on behalf of the proposed class defined below ("Class"), against Instacart, which Plaintiffs contend misclassified them as independent contractors.

21.    Made simple, Instacart is a grocery shopping and delivery service company whose workers shop for groceries from various grocery stores, including Safeway, Whole Foods, Costco, Bi-Rite, BevMo!, CVS, Jewel-Osco, Mariano's, Aldi, Trader Joe's, and Meijers and then deliver them to Instacart customers.

22.    Plaintiffs and putative class members worked or continue to work as personal shoppers, drivers, and delivery persons for Instacart (collectively, "Shoppers").  Shoppers are dispatched through a mobile phone application to shop, purchase, and deliver groceries to customers at their homes and businesses.

23.    Instacart does not recognize itself as a grocery delivery service, instead calling itself a "technology company that offers a proprietary communications and logistics platform."  In reality, its "platform" assigns customer orders to workers, such as Plaintiffs, just as any dispatcher would assign work orders.  Instacart uses these tech-heavy buzzwords to brand itself as something other than what it really is – a grocery delivery service subject to the same employment laws as any other employer.

24.    In practice, Instacart controlled the "when," "where," and "how" of Plaintiffs' jobs.  The work performed by Plaintiffs was within the usual course of Instacart's business of grocery delivery and Plaintiffs were completely dependent on the Instacart platform to perform grocery delivery work. They were not independently engaged in grocery delivery outside of their work for Instacart. Under the applicable test for employment under the federal Fair Labor Standards Act and the Illinois Minimum Wage Law, Shoppers are

presumptive employees entitled to labor law protections such as minimum wage guarantees, overtime compensation, workers' compensation insurance coverage, payroll tax contributions, and other employee benefits. By misclassifying Shoppers as independent contractors, however, Instacart denied them these rights, shifting all risk to Shoppers and saving itself millions in overhead in the process.

25. Defendants intentionally misrepresented to Plaintiffs that they were independent contractors and therefore not entitled to wages for non-productive time, reimbursements for expenses incurred in relation to their employment, workers' compensation insurance benefits, and tax benefits enjoyed by employees.

26. This action asserts causes of action under federal and Illinois state law for failure to pay minimum wage and overtime, denial of meal breaks and rest periods, failure to properly report pay, denial of reimbursements for business-related expenses, willful misclassification, nonpayment of gratuities, failure to indemnify for losses caused by Instacart's own negligence, unfair competition, tortious interference with prospective economic advantage, and fraud/intentional misrepresentation.

27. Plaintiffs assert claims pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, et seq., the Illinois Minimum Wage Law, 820 ILCS §105/1 et seq, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*, individually and on behalf of the following class of individuals:

**All individuals who performed personal shopping, delivery services, or both for Instacart in the State of Illinois from October 16, 2009 to the present.**

28. Plaintiffs seek actual and/or compensatory damages, civil penalties, restitution, equitable relief, costs and expenses of litigation, including attorneys' fees, and all additional and further relief that may be available and that the Court may deem appropriate and just under all of the circumstances.

## VI.    FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

### Instacart's Business Model Deprived Plaintiffs
### the Benefits and Protections of Employment

29.    Instacart provides grocery delivery services to customers in cities throughout the country via an on-demand dispatch system.

30.    Instacart offers customers the ability to purchase groceries from specified stores on a mobile phone application or over the Internet and have them delivered by "personal shoppers" within one or two hours.

31.    Instacart's website advertises that "Instacart delivers groceries in as little as an hour!"

32.    Instacart operates by hiring and employing an extensive workforce of individuals who perform the functions of shopping for and purchasing the groceries ordered by the customers and delivering said groceries to the customers. The shoppers' and drivers' services are fully integrated into Instacart's business, and without them, Instacart's business would not exist.

33.    However, at all relevant times, Defendants treated Plaintiffs like independent contractors to the detriment of Plaintiffs in various manners, including but not limited to, requiring Plaintiffs to use their own vehicle to make deliveries, pay for driving-related expenses, failing to provide liability insurance for the operation of Plaintiffs' motor vehicles, failing to provide workers' compensation insurance, and requiring Plaintiffs to pay increased tax rates mandatory for independent contractors.

34.    Additionally, Defendants required Shoppers to use their own smart phones and data from their personal cell phone service plans in order to receive and carry out work orders.

35.    Instacart voluntarily and knowingly misclassified Plaintiffs and other

Instacart shoppers as independent contractors for the purpose of avoiding the significant responsibilities associated with the employer/employee relationship, including, *inter alia*, the payment of wages for non-productive time, expense reimbursements, provision of workers' compensation insurance, payment of state and federal taxes, and other benefits.

36.     At all relevant times, Defendants issued Plaintiffs a Form 1099, indicating Plaintiffs were independent contractors and was not Defendants' employees.

37.     At all times during their employment with Defendants, Plaintiffs were misclassified as independent contractors by Defendants, were in fact employees of Defendants, and suffered actual economic harm as a consequence of this misclassification.

### Instacart Extensively Controlled All Aspects of Plaintiffs' Job

38.     Despite Instacart's explicit and implicit classification of Plaintiffs as independent contractors, Plaintiffs are in fact employees of Defendants.  Plaintiffs are required to follow a litany of detailed requirements imposed on them by Instacart and are graded and subject to termination based on their failure to adhere to these requirements.

39.     At all relevant times, Instacart exerted control over Plaintiffs in a manner consistent with an employer-employee relationship, including but not limited to, generating the work orders for Plaintiffs; controlling their wages; enforcing behavioral codes of conduct; controlling the means, manner, and method by which they perform they work; and controlling the conditions of employment.  Instacart directed Plaintiff precisely when and where they were to collect and deliver groceries to Instacart customers, how they were to interact with Instacart customers, and had the right to terminate them from Instacart's employment at Instacart's discretion.

40.     When working for Instacart, Shoppers were expected to hold themselves out as Instacart employees were provided lanyards with the Instacart logo to identify them to customers as Instacart Shoppers.

41.     Instacart trained and directed Plaintiffs on how to evaluate and select produce and how to bag items.

42.     Plaintiffs were to follow Instacart protocol if an item was unavailable. The Instacart App directed Shoppers to choose specific replacement items. If these items were unavailable, Instacart directed Plaintiffs to try to match the quantity ordered and prioritize health features. For example, if the requested but unavailable item was gluten-free, Plaintiffs were directed to purchase a gluten-free substitute.

43.     Instacart also controlled how Shoppers were to interact with customers. Instacart provided instructions on what Shoppers were to say when leaving voicemails for customers, what to say when on the phone with a customer to add a substitute item for an unavailable item, and what to say when delivering the groceries to the customer.

44.     Additionally, Shoppers were required to accept (or "acknowledge") every job (also called a "batch") that Instacart sent to their smartphone within a set time. If Plaintiffs failed, for whatever reason, to accept even a single batch, Plaintiffs would receive no compensation for the rest of the pre-determined shift regardless of whether they were one minute or six hours into their shift. After acknowledging an order, Plaintiffs were required to start picking the groceries within a certain timeframe. If Plaintiffs repeatedly did not meet Instacart's expectations as to the time within which to commence picking, Instacart would schedule them for fewer shifts or not at all.

### Instacart Dictated All the Particulars
### of Plaintiffs' Work Through its Mobile Application

45.     At all relevant times, Plaintiffs were assigned their work by Instacart via a mobile phone application ("Instacart App") on a daily basis. The only way to perform any work for Instacart was through the Instacart App, which could only be used as determined by Instacart.

46. As a result, Plaintiffs did not know where they were to be assigned to work, the type of deliveries they were to be performing, or the length of time any given assignment was expected to require until they received Instacart's work order notification. Plaintiffs were not permitted to collect the materials from locations of their choosing or deliver them at a time or a price negotiated by Plaintiffs.

47. Instacart monitored and managed Plaintiffs' job performance down to the minute. Plaintiffs were required to notify Instacart, by way of the Instacart App, when they were starting to shop for an order, when the purchase was complete, when they were starting the delivery process, and when delivery was complete.

48. Instacart used a letter or number grading system to evaluate Plaintiffs and all other Shoppers. The grades or scores were comprised of at least three components: reliability, accuracy, and speed. Shoppers were expected to have a "picking speed" within a set time range of "minutes per item." Instacart also told Shoppers that they were expected to have a certain minimum accuracy score and minimum reliability score.

49. Instacart monitored and tracked the location and speed of Shoppers while they were completing orders and communicated directly with Shoppers via text message or phone call if they deviated from the enumerated protocols or timing requirements to inquire why they were running late, even if only by a minute or two. Instacart also sent text messages requesting that Shoppers provide minute-by-minute updates on the delivery status of their assigned orders.

50. If Shoppers did not comply with Instacart's work requirements, they were subject to reduced effective pay, discipline, and "deactivation" - a tech industry euphemism for being fired. If Shoppers' grades/scores were outside Instacart's expectations, Instacart would assign them fewer or smaller batches and fewer or shorter shifts.

51.     Instacart communicated its expectations, protocols, and rules to Plaintiffs and other Shoppers via regular e-newsletters, communications through the Shopper App, training manuals, videos, emails, and phone calls. Instacart managers also sent text messages to Shoppers about their performance of deliveries, messages about their shifts, directions on how to shop, and other managerial issues.

52.     At times, the Instacart App would suffer from systemic malfunctions in which the App would crash, freeze, glitch, or in some way prevent Shoppers from continuing their work.

53.     When the App malfunctioned, it would take as long as five minutes to restart, reset, or reinstall the App to bring it back to full functionality.

54.     For the duration of the App's malfunction, Shoppers were unable to continue their shift. In fact, Instacart penalized Shoppers for the delay they suffered due to Instacart's malfunctioning App through negative performance evaluations, disciplinary action, termination, and decreased wages.

55.     Upon information and belief, Instacart knew that the App malfunctions were widespread and systemic, rather than isolated to a particular shopper. Nevertheless, Instacart never adequately fixed the problem. Instead, Instacart's lack of ordinary care in maintain its platform directly resulted economic loss to Plaintiffs and other Shoppers.

**Independent Contractor Agreement**

56.     As a condition of employment, Plaintiffs were required to sign an agreement with Instacart titled the "Independent Contractor Agreement." This document, which Plaintiffs were required to sign to be eligible for employment, was drafted by Instacart, was not subject negotiation, and was presented to Plaintiffs at the end of the application process as a condition of employment.

57.     Among other things, it stated that Plaintiffs were to be treated as an independent contractor and not an employee of Instacart.  On that basis, Instacart denied Plaintiffs and thousands of other Instacart Shoppers basic employment rights, benefits, and protections.

58.     The Independent Contractor Agreement also represented to Plaintiffs that they would "be solely responsible for determining the manner and method of performing all Services."  See Ex. 1, Independent Contractor Agreement, § 5.2. In reality, Plaintiffs had no control over the method and manner of their work.  Plaintiffs relied on this misrepresentation to their detriment.

**Instacart Controlled Shoppers' Wages and Tips**

59.     Instacart exerted sole control over Plaintiffs' wages. At all relevant times, Plaintiffs were paid in a manner completely dependent on the nature of the deliveries they made, including the quantity of items Plaintiffs were required to collect and deliver under each individual work order.

60.     On multiple occasions throughout the relevant period, Instacart unilaterally modified the compensation structure applicable to Shoppers without any negotiation or consent on the part of the Shoppers.

61.     At all relevant times, Instacart paid Plaintiffs via direct deposit.  A wage statement was provided on the Instacart App.  However, at all relevant times, the Instacart App omitted the Plaintiffs' hours worked or the hourly rate paid.  Nor did the App provide Plaintiffs information as to their piece rate compensation (i.e., per-batch commission) or the number of piece rate units earned.  Plaintiffs had no means of verifying they were being paid correctly.

62.     At all relevant times, Instacart customers were able to tip their Shopper via the Instacart App.

63.     Instacart credited customer tips against wages in order to supplement Shoppers' wages. Since customers included gratuity when they made the order, Instacart used the gratuity as a part of its calculation to determine an individual Shopper's rate of pay for that order. As a result, some portion of customer gratuity was used by Instacart to pay Shoppers their wages for each order. By preventing Shoppers from seeing how much the customer paid for their order and by withholding accurate wage statements, Instacart deprived them of their ability to combat the unlawful tip crediting practice.

**Instacart Controlled When and How Long Plaintiffs Worked**

64.     At all relevant times, Plaintiffs were required to provide windows of availability to Instacart on a weekly basis.  Plaintiffs could list availability for shifts of up to twelve hours in duration. Instacart then assigned Plaintiffs a schedule of shifts for the upcoming week.

65.     At the start of an assigned shift, Plaintiffs were required to report to a certain territory specified by the App. Instacart would not assign batches to Plaintiffs until they were within their territory; however, there was no guarantee that they would be assigned any batches even if they were within their territory. Plaintiffs were not paid for the time that they were on shift but had not yet been assigned a batch.

66.     If Shoppers did not report to their territory at the start of an assigned shift, reported late to a shift, or cancelled a shift within twenty-four hours, Instacart lowered the "reliability score" component of their Shopper Grade.  A low reliability score resulted in being assigned less or shorter shifts or being deactivated.

**Instacart Denied Plaintiffs Minimum Wage and Overtime**

67.     At all relevant times, Plaintiffs were paid in a manner completely dependent on the nature of the deliveries they made, including the quantity of items Plaintiffs were required to collect and deliver under each individual work order.

68.     Plaintiffs were required to make themselves available to perform work within a predetermined range of time each day but was not compensated in a manner that guaranteed they were compensated at or above the applicable minimum wage during those hours.  During non-productive time, or time during which Plaintiffs were required to be on shift in a specific location but was not yet assigned a batch, Plaintiffs were not compensated in any manner whatsoever.

69.     Shoppers could sign up for shifts of up to twelve hours in duration.  If, at the end of a shift, Instacart was experiencing high volumes of orders, Shoppers could extend their shifts, in some cases up to fifteen hours.  Plaintiffs sometimes worked up to sixty or more hours per week.  Despite these long hours, Plaintiffs were not compensated at the required overtime rates.

70.     Plaintiffs were also required to work when they should have been given rest periods and meal periods.  While the Instacart App did have a feature which allowed a Shopper to temporarily suspend incoming orders in order to take a break, it only provided for a single twenty minute break over the course of twenty-four hours regardless of the length of the shift.  As explained above, Instacart would terminate the remainder of Plaintiffs' shifts if they failed to acknowledge a batch within three minutes. Thus, Plaintiffs were forced to forego taking any additional breaks or else risk having the remainder of their shift terminated.

71.     At no time during Plaintiffs' employment did Defendants provide Plaintiffs with any written or electronic wage statement showing hours worked, gross and net wages, hourly rates, or federal or state deductions.

72.     Plaintiffs were paid on a commission basis without regard to the hours worked above forty hours in a given week.

**Instacart Failed to Reimburse Shoppers For Business-Related Expenses**

73.     At all relevant times, Plaintiff was required to bear many of the expenses of their employment, including expenses for their vehicles, gas, and other expenses. At times, these expenses caused Plaintiffs wages to fall below minimum wage.

74.     Illinois state employment law under Chapter 820 of the Illinois Compiled Statutes requires employers to reimburse employees for such expenses, which are for the benefit of the employer and necessary for the employees to perform their jobs.

75.     At all relevant times, Defendants required Plaintiffs to use and maintain insured and licensed vehicles as a condition of their work.  Plaintiffs were required to pay all expenses related to the use and maintenance of their vehicles, including expenses related to liability insurance, fuel, routine maintenance, and the upkeep of their vehicles' appearance. Shoppers often incurred costs related to parking, such as parking meter payments and parking tickets, which were necessitated by Defendants' directives to its drivers.  For example, Instacart directed its full-service and delivery-only shoppers to not park in the grocery store parking lots but instead to illegally park near the store's entrance while they went in to pick up their order.  Defendants also required Shoppers to use their own smart phones and data from their personal cell phone service plans as a condition of their work in order to receive and carry out work orders. Defendants did not reimburse Plaintiff for these work-related expenses in any manner.

76.     At all relevant times, Defendants did not provide Plaintiffs with workers' compensation insurance.   Shoppers injured in the course and scope of their employment with Defendants were left to rely on either their own private medical insurance or make direct payments for medical treatment rendered as a result of industrial injuries. They were also subject denial of coverage by their private insurance because they were injured on the

job. Shoppers were additionally ineligible for workers' compensation disability benefits if they were physically unable to perform their work as a consequence of industrial injuries.

77.    At all relevant times, Defendants paid taxes in a manner consistent with Plaintiffs' misclassification as independent contractors.  As a consequence, Plaintiffs were required to pay increased state and federal taxes at the rate of independent contractors despite the fact they were an employee.

**Instacart Prohibited Shoppers From Disclosing Their Working Conditions**

78.    Instacart Shoppers organized through Facebook groups in order to discuss the terms and conditions of their employment, orchestrate nationwide boycotts and strikes in an effort to increase their pay, and generally engage in concerted activities for mutual aid and protection.

79.    Since Shoppers' work was performed exclusively through the Instacart App, Shoppers shared screenshots of the App in their groups in order to discuss their working conditions.

80.    Instacart routinely disciplined or terminated Shoppers for sharing screenshots of the Instacart App and discouraged others from sharing screenshots under the façade of protecting customer privacy. However, Instacart terminated Shoppers who shared screenshots in which no confidential customer information was displayed.

81.    Instacart's actions to chill its employees' exercise of their right to engage in concerted activities and disclose information about their working conditions is in violation of Illinois public policy and state laws governing employment.

**Instacart's Willful and Reckless Violation of Labor Laws**

82.    Instacart willfully violated the Fair Labor Standards Act and Illinois state employment laws. Instacart knew that Shoppers were properly treated as employees but chose to misclassify them as independent contractors. Instacart's motivation in

misclassifying Plaintiffs and the other Shoppers as independent contractors was to avoid the additional costs and financial responsibilities associated with an employer/employee relationship, including, inter alia, the payment of minimum wage and overtime, the payment of wages for non-productive time, expense reimbursements, payment of state and federal taxes, and other benefits.

83.     Instacart also specifically knew or recklessly disregarded whether it was violating federal and Illinois state labor laws by not paying Shoppers minimum wage for all hours worked and overtime for hours over 40 worked in a week.  Instacart knew of the Labor Code, the financial obligations it imposes on employers, and its applicability to Instacart with respect to Plaintiff and other Shoppers.  Again, it was Instacart's knowledge of these financial obligations and its desire to circumvent them that motivated Instacart to willfully misclassify Plaintiffs and the other Shoppers.

84.     Instacart is a sophisticated entity with operations in all fifty states, the District of Columbia, and Canada, directing what it refers to as a "fleet" of over 70,000 grocery delivery personnel spread across the country. According to Instacart, the company is valued at $7.6 billion.

85.     Instacart knew Shoppers were working more than forty hours a week and that Instacart was not paying Shoppers overtime wages. Instacart calculated and tracked the average hourly wage it paid Shoppers and could easily see when Shoppers' effective hourly rate fell below the applicable minimum wage. Instacart also knew that there were hours during Shoppers' shifts when they were not assigned orders and that they were not paid for those hours.

86.     As alleged herein, Instacart maintained extensive and pervasive control over Plaintiffs and the other Shoppers' conduct, means and manner of work, appearance, actions, wages, and hours. Instacart had detailed knowledge of and control over how many

hours Shoppers were working on a daily and weekly basis, including when Shoppers worked over forty hours per week, and how many orders Shoppers were assigned and when. Instacart's system is designed to assign shifts up to ten hours in duration, which could be extended to twelve hours but only allowed for a single twenty-minute break over the course of twenty-four hours regardless of the length of the shift.

87.     Instacart also knew how much it was paying Plaintiffs and that its method of compensation (i.e., on a piece rate/commission basis) gave no consideration to whether Plaintiff worked more than 40 hours in a given week or whether there were hours during Plaintiff's shifts when they were not assigned orders. Indeed, it was Instacart's practice to deny that overtime wages were due to be paid to Plaintiffs for work in excess of forty hours per week and to deny that any wages were due to be paid for non-productive hours even though Instacart knew that, under any set of circumstances or facts, Plaintiffs were entitled to be paid at least minimum wage for each hour that they worked.  Instacart has falsely denied and refused and continues to deny falsely and refuse payment for purposes of securing a material economic benefit to itself and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiffs and other Shoppers.

88.     Further compounding its willful actions is the fact that Instacart never provided Plaintiffs with any written or electronic wage statement that showed their hours worked, hourly rates, piece rate information, and federal and state deductions or wage statements that accurately reported their gross and net wages.

89.     Instacart chose to classify Shoppers as independent contractors to save money.

90.     On November 19, 2013, Instacart founder and CEO Apoorva Mehta stated the following:

"The reason why Instacart is extremely disruptive, is because we don't have

19

any physical infrastructure. We have not built any warehouses. We don't
have a fleet of trucks that we own or lease. And we don't hold any inventory.
We have made grocery delivery possible with just software. And the way
we've been able to do that is leveraging mobile based crowdsourcing. This
has allowed us to operate at extremely low fixed costs, get started with very
low capital expenditure, and it has allowed us to expand to new cities
extremely quickly."[1]

91.    Plaintiffs believe internal Instacart documents exist confirming that Instacart
knew the shoppers were supposed to be treated as employees and that Instacart knew
Shoppers could not make up to the promised wages advertised online. For example,
Plaintiffs understand that Instacart held monthly all-hands meetings, led by CEO Apoorva
Mehta. Plaintiffs understand that these meetings were live-streamed over the Internet so
corporate employees who were not physically in attendance could watch and that
PowerPoint presentations accompanied the meetings.

92.    During one of these meetings held in or around August 2015, Mr. Mehta
addressed the issue of shopper misclassification, the conversion of in-store shoppers to
employees, and the fact that other shoppers remained classified as independent contractors.

93.    Additionally, Instacart managers Susie Sun, Michelle Suwannukul, and
Heather Wake instructed Operations Associates to continue running the advertisements that
represented that Instacart Shoppers could make a certain amount of money per hour even
though they were aware that Shoppers were making an average hourly rate that was well
below the advertised rate.

---

[1] (Adigital, EEC13 – Apoorva Mehta (Instacart), YouTube (Nov. 19, 2013),
<https://www.youtube.com/watch?v=MSyYrOvBXMc> at 3:00-3:41.)

94.     Additionally, in June 2016, the IRS issued a determination finding an Instacart Shopper to be an employee for federal employment tax purposes for work performed during 2015 and state labor commissions in both New York and Colorado have issued findings that Instacart Shoppers are properly classified as "employees."

95.     In misclassifying Plaintiffs and other Shoppers as independent contractors and failing to pay Plaintiffs wages and compensation due to them, as well as by committing the numerous other violations detailed in this complaint, Defendants, by and through their officers, directors or managing agents, acted with malice, oppression and or conscious disregard for the statutory or other rights of Plaintiffs, and committed fraud by willfully and wrongly treating Plaintiffs as an independent contractor and not an employee.

<u>COUNT I</u>

**NATIONWIDE COLLECTIVE ACTION**
**<u>VIOLATION OF FAIR LABOR STANDARDS ACT</u>**

96.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

97.     Plaintiffs bring this cause of action on behalf of themselves and all other Instacart Shoppers who have worked for or on behalf of one or more of the Defendants anywhere in the United States any time between October 16, 2017 and the date of final judgment in this matter.

98.     Plaintiffs bring this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act.  Plaintiffs and other Instacart Shoppers are similarly situated in that they are all subject to Instacart's common plan or practice of classifying Shoppers as independent contractors, not paying them overtime for all hours worked beyond forty (40) in a given week, and not ensuring that they receive at least the federal minimum wage for all hours worked.

99.     At all relevant times, Defendants, and each of them, have been the employers of Plaintiffs, their employees, and have been engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA. Defendant's annual operating revenues exceed $500,000.

100.    Plaintiffs consent to sue for violations of the FLSA pursuant to 29 U.S.C. § 216(b) and 256. The written consent forms for Plaintiffs are attached hereto as Exhibit 2.

101.    The FLSA, 29 U.S.C. §§ 201 *et seq.*, requires employers, such as Defendants, to compensate their non-exempt employees, such as Plaintiffs, at a rate of not less than the minimum wage for all hours worked. The FLSA further requires employers to compensate employees at or above one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a single week. In addition, the FLSA requires employers to record, report, and preserve records of hours worked by employees.

102.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs at a rate not less than the minimum wage for all hours worked, and failed to compensate Plaintiffs at or above one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a single week, in violation of the FLSA, including 29 U.S.C. § 207(a)(1) and § 215(a).

103.    The FLSA mandates that an employee's wages must be "free and clear" of "kickbacks," and requires employers to reimburse employees for such expenses, which are for the benefit of the employer, when failing to do so would cause their wages to drop below the federal minimum wage.

104.    Plaintiffs were required to bear many expenses related to their employment that were for the benefit of Defendants, including expenses related to the maintenance of their vehicles, gas, cell phone bills, and other expenses. Defendants did not reimburse Plaintiffs for these expenses. At times, these expenses caused Plaintiffs' wages to fall below

minimum wage.

105.     Defendants, and each of them, have failed to record, report, or preserve records of hours worked by Plaintiffs sufficient to determine wages, hours, and other conditions and practices of employment, in violation of the FLSA, including 29 U.S.C. § 211(c) and § 215(a).

106.     As alleged above, Instacart credited customer tips against wages in order to supplement Shoppers' wages. Since customers included gratuity when they made the order, Instacart used the gratuity as a part of its calculation to determine an individual Shopper's rate of pay for that order. As a result, some portion of customer gratuity was used by Instacart to pay Shoppers their wages for each order.

107.     Defendants' practice of crediting tips against wages constitutes an illegal tip pool in violation of the FLSA, including 29 U.S.C. § 203(m).

108.     The conduct described herein constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

109.     Plaintiffs seek recovery of attorneys' fees and costs to be paid by Defendants, as provided under 29 U.S.C. § 216(b).

110.     Plaintiffs have incurred economic damages as a direct and proximate consequence of the acts of Defendants alleged herein.  Plaintiffs seek damages in the amount of their respective unpaid compensation, unpaid overtime compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and other such legal and equitable relief as the Court deems just and proper.

111.     This claim is brought on behalf of a class of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. § 216(b).

112.     Plaintiffs brings the following causes of action as a class action pursuant to Section 5/2-801 of Chapter 735 of the Illinois Compiled Statutes, on behalf of themselves and the following class:

**All individuals who performed personal shopping, delivery services, or both for Instacart in the State of Illinois from October 16, 2009 to the present.**

113.     Plaintiffs reserve the right to amend this Class definition if discovery or further investigation demonstrate that the Class should be expanded or otherwise modified.

114.     Plaintiffs and other members of the Class have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

115.     The members of the Class are so numerous that joinder of all members would be impracticable.

116.     There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

a)   Whether Class members have been required to follow uniform procedures and policies regarding their work for Instacart;

b)   Whether the work performed by Class members—providing grocery shopping and delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

c)   Whether Plaintiff was independently engaged in the business of grocery delivery outside of their work for Instacart;

d)   Whether Defendants failed to pay Plaintiffs for all hours of work performed in violation of Illinois law;

e)   Whether Defendants failed to reimburse Plaintiffs for expenses incurred during the course of their employment;

f) Whether Defendants' conduct violates the Fair Labor Standards Act and Illinois state employment law;

g) Whether Defendants' conduct violates Section 510/1 of Chapter 815 of Illinois Compiled Statutes;

h) Whether Defendants' conduct otherwise violates Illinois law; and

i) Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to damages, restitution, equitable relief or other damages and relief, and, if so, the amount and nature of such relief.

117. Plaintiffs are members of the Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

118. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs have no interests antagonistic to those of the Class and is not subject to any unique defenses.

119. Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class and has retained attorneys experienced in class action and complex litigation.

120. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

121. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

a) It is economically impractical for members of the Class to prosecute individual actions;

b) The Class is readily definable;

c) Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d) A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

122. Plaintiff does not anticipate any difficulty in the management of this litigation.

## COUNT II

### WILLFUL VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT – UNPAID WAGES FAIR LABOR STANDARDS ACT

123. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

124. Defendants, and each of them, have violated and continue to violate Chapter 820 of Illinois Compiled Statutes California Labor Code §§ 115/4, 105/12, 105/4 by willfully refusing to pay wages – including the benefits described above – due and payable to Plaintiffs. As more fully set forth above, Plaintiffs are not compensated for non-productive hours worked. Additionally, Plaintiffs work and have worked well in excess of 40 hours per week without being appropriately compensated for hours worked in excess of 40 hours per week. These unpaid hours include overtime that should have been paid.

125. Equally, Defendants denied that any wages due for non-productive work and work in excess of forty hours per week were due to be paid to Plaintiffs even though each Defendants knew that under any set of circumstances or facts, Plaintiffs were entitled to be paid for each hour that they worked. Defendants have falsely denied and refused and continue to deny falsely and refuse payment for purposes of securing a material economic benefit to themselves and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiffs.

126.    Moreover, Defendants failed to pay Plaintiffs gratuities paid by customers for their service, instead used them as a credit against their wages. Since customers included gratuity when they made the order, Instacart used the gratuity as a part of its calculation to determine an individual Shopper's rate of pay for that order. As a result, some portion of customer gratuity was used by Instacart to pay Shoppers their wages for each order. By preventing Shoppers from seeing how much the customer paid for their order and by withholding accurate wage statements, Instacart deprived them of their ability to combat the unlawful tip crediting practice.

127.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiffs, in a civil action, for the unpaid balance of the amount of unpaid wages, including interest thereon, and reasonable attorneys' fees and costs of suit, as well as the assessment of any other civil and statutory penalties, including waiting time penalties, against Defendants.

128.    Throughout their employment, Plaintiffs incurred expenditures or losses related to their employment and in direct consequence of the discharge of their duties as Defendants' employees, or of their obedience to the directions of Defendants.

129.    Defendants failed to reimburse or indemnify Plaintiffs for these expenditures or losses.  Items and services that Plaintiffs were required to purchase include, but are not limited to gas, automotive insurance, other vehicle maintenance services, parking privileges, smartphones, and smartphone data packages.

130.    By the conduct described herein, Defendants have violated the Illinois Wage Payment and Collection Act.

131.    As a result of Defendants' violations, Plaintiffs are entitled to reimbursement of the incurred expenses, as well as attorneys' fees and costs and all civil penalties available

as a result of such conduct.

## COUNT III

**SUPPLEMENTAL STATE LAW CLAIM**
**VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW**

132.    Plaintiffs hereby reallege and incorporates by reference all paragraphs above as if set forth in detail herein.

133.    Plaintiffs have been and are expected to regularly work in excess of forty hours per week.  Plaintiffs have regularly worked in excess of forty hours per week.

134.    At all relevant times, Defendants failed to pay Plaintiffs and all persons similarly situated wages when due, as required by Chapter 820 of Illinois Compiled Statutes §§ 115/3, 105/4a, 105/12, & 145/1.

135.    Such a pattern, practice and uniform administration of a corporate policy designed to deprive employees of compensation, as described herein, is unlawful and creates an entitlement to recovery by the Plaintiffs, in a civil action, for the unpaid balance of the amount of overtime and other compensation, including interest thereon, reasonable attorneys' fees and costs of suit, as well as the assessment of any other civil and statutory penalties against Defendants.

136.    Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs at a rate not less than the minimum wage for all hours worked in violation of Chapter 820 of the Illinois Compiled Statutes, including sections 115/3, 105/12 and 115/3.

137.    As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under Chapter 820 of the Illinois Compiled Statutes and any other applicable law, including the unpaid balance of the amount of minimum wage, including interest thereon, reasonable attorneys' fees and costs of suit, as well as the assessment of any

other civil and statutory penalties against Defendants.

## COUNT IV

### SUPPLEMENTAL MUNICIPAL CLAIM VIOLATION
### OF THE COOK COUNTY MINIMUM WAGE ORDINANCE

138.    Plaintiffs hereby reallege and incorporates by reference all paragraphs above as if set forth in detail herein.

139.    Plaintiffs were each an "employee" under the CCMWO § 44-12 of the Municipal Code of Cook County and were not exempt from the overtime provisions of the CCMWO §§ 44-15.

140.    Defendant was an "employer" as defined in the CCMWO § 44-12.

141.    Under § 44-15, for all weeks during which Plaintiffs, and members of the Plaintiff Class, worked more than forty (40) hours, they were entitled to be compensated at a rate of one and one-half times their regular hourly rates of pay.

142.    Defendant's failure and refusal to pay any wages for hours worked in excess of 40 per week was a violation of the maximum hour provision of the CCMWO § 44-15.

## COUNT V

### SUPPLEMENTAL MUNICIPAL CLAIM
### VIOLATION OF THE CHICAGO MINIMUM WAGE ORDINANCE

143.    Plaintiffs hereby reallege and incorporates by reference all paragraphs above as if set forth in detail herein.

144.    Plaintiffs, and members of the Plaintiff Class, were each an "employee" under the CMWO§ 1-24-10 of the Municipal Code of Chicago and were not exempt from the overtime wage provisions of the CMWO § 1-24-050.

145.    Defendant was an "employer" as defined in the CMWO§ 1-24-10.

146.    Under § 1-24-040, for all weeks during which Plaintiffs and members of the Plaintiff Class worked more than forty (40) hours, they were entitled to be compensated at a rate of one and one-half times their regular hourly rates of pay.

147.    Defendant's failure and refusal to pay overtime wages for hours worked in excess of 40 per week was a violation of the maximum hour provisions of the § 1-24-040.

## COUNT VI

## DECEPTIVE BUSINESS PRACTICES

148.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein. Instacart has engaged in unfair and deceptive business practices as set forth above. By engaging in the above-described acts and practices, Instacart has committed one or more acts of unfair competition within the meaning of 815 ILCS § 510/1, *et seq*. These acts and practices constitute a continuing and ongoing unfair and deceptive business practice and justify an award of actual damages, the issuance of an injunction, and other equitable relief pursuant to the 815 Ill. Comp. Stat. Ann. 505/10a.

149.    Instacart's acts and practices, as described above, constitute fraudulent business practices within the meaning of 815 Ill. Comp. Stat. Ann. 505/2.

150.    As described herein, Instacart failed to keep accurate records of the hours worked by Plaintiff. At all relevant times, Instacart failed to provide Plaintiffs with accurate records of pay indicating the hours worked and/or the wages paid for the hours worked.  In addition, based on fraudulent reporting of hours worked and wages paid, inaccurate information regarding state and federal deductions were provided to Plaintiffs.

151.    Additionally, as described herein, Instacart represented to Plaintiffs that they, alone, was responsible for the performance of his work and that he, alone, determined the method, details, and means of performing his work.  These representations were false.

152.    Instacart also represented Plaintiffs were independent contractors not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

153.   Instacart knew the falsehood of these representations and intended to, and did, induce Plaintiffs' reliance thereupon.  Plaintiffs relied upon the truth of the representations, causing economic harm.

154.   Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Instacart's misleading and fraudulent conduct, including but not limited to unpaid wages including overtime.

155.   Instacart's acts and practices, as described above, constitute unfair business practices within the meaning of 815 Ill. Comp. Stat. Ann. 505/2.  Such acts and practices were against established public policy and were pursued to attain an unjustified monetary advantage for Instacart by creating personal disadvantage and hardship to its employees.

156.   Instacart's conduct does not benefit workers or competition. Indeed, the injury to Plaintiff as a result of Instacart's conduct is far greater than any alleged countervailing benefit. Plaintiff could not have reasonably avoided the injury he suffered.

157.   The gravity of the consequences of Instacart's conduct as described above outweighs any justification, motive or reason therefore, is immoral, unethical, oppressive, unscrupulous, and is contrary to the public welfare since it transgresses civil statutes of the State of Illinois designed to protect workers from exploitation.

158.   Plaintiffs have suffered injury in fact and lost money and/or property as a result of Instacart's unfair business acts and practices by, inter alia, being deprived of compensation for all hours worked including overtime and being paid at a rate substantially less than the promised amount that Instacart advertised he could make.

159.   By and through its unfair and deceptive business practices and acts described herein, Instacart has obtained valuable services from Plaintiffs and have deprived Plaintiffs of valuable rights and benefits guaranteed by law, all to his detriment. Plaintiffs seek an order of the Court awarding restitution, disgorgement, injunctive relief and all other relief allowed under the Illinois Unfair and Deceptive Business Practices Act.

160.     This claim is brought by Plaintiffs on behalf of themselves and a class of similarly situated individuals.

## COUNT VII

## COMMON LAW CLAIM

### TORTIOUS INTERFERENCE WITH
### PROSPECTIVE ECONOMIC ADVANTAGE

161.     Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

162.     As alleged above, Instacart credited customer tips against wages by lowering wages for batches in which customers paid a higher gratuity.

163.     In effect, Instacart used customer tips in order to help pay Plaintiffs' wages.

164.     Instacart intentionally and maliciously misappropriated gratuities in order to pay Plaintiffs' wages even though Instacart maintained that 100 percent of customer tips went directly to shoppers. Based on this representation, Instacart knew that customers would believe their tips were being given to Shoppers in addition to wages, not to supplement wages entirely.

165.     Instacart misled customers as to the amount of gratuity actually received by Shoppers in order to continue profiting from customers' ignorance.

166.     At the time a customer entered the payment screen in the Instacart App, an economic relationship had formed between the customer and Shopper.

167.     At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the Shopper in the form of a tip.

168.     At all times, Instacart had knowledge of the economic relationship formed between Plaintiffs and the customers.

169.     At all times, Instacart acted intentionally and maliciously to disrupt the

economic relationship between Plaintiffs and the customers by interfering with Plaintiffs' enjoyment of an expectancy of tips from customers.

170.    Instacart's misappropriation of tips caused actual disruption of the economic relationship between Plaintiffs and the customers.

171.    As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiffs have  suffered, and will continue to suffer, economic injuries.

## COUNT VIII
### COMMON LAW CLAIM
### CONVERSION

172.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

173.    Tips are the property of the employees to whom they are paid. Thus, Plaintiffs had a right to possess the full amount of tips given to him by customers.

174.    As alleged above, Defendants used portions of the gratuities paid by customers as a credit towards Plaintiffs' wages.

175.    Defendants thus wrongfully and illegally took from Plaintiffs a portion of the tips given to them by customers.

176.    Plaintiffs suffered economic harm in the amount of the tips misappropriated by Defendants.

## COUNT IX
### COMMON LAW CLAIM
### FRAUD/INTENTIONAL MISREPRESENTATION

177.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

178.    Instacart represented to Plaintiffs that they would receive 100 percent of customer tips. However, Instacart actually used a portion of customer tips to supplement the wages Plaintiffs were paid for each batch. Since customers customarily tipped based on the order and before a Shopper had been assigned, Instacart was able to include the gratuity in its calculations in determining Plaintiffs' wages for a particular batch.

179.    Instacart also represented to Plaintiffs that they, alone, were responsible for the performance of their work and that they, alone, determined the method, details, and means of performing their work.  These representations were, in fact, false.

180.    Instacart also represented to Plaintiffs that Plaintiffs were independent contractors not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

181.    Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiffs' reliance thereupon.  Plaintiffs reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart.  Plaintiffs' reliance was a substantial factor in causing economic harm.

182.    As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiffs suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, pray for judgment against Defendants as follows:

a)      An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

b)      For a declaratory judgment that the practices complained of herein are

unlawful under appropriate state law, and that Plaintiffs and the putative class members are employees, and not independent contractors;

c)       For actual and compensatory damages according to proof pursuant to the Fair Labor Standards Act, the Illinois Compiled statutes, Municipal Code of Cook County and Municipal Code of Chicago;

d)       For restitution and disgorgement to the extent permitted by applicable law;

e)       For an order enjoining Defendants from continuing to engage in the conduct described herein;

f)       For civil and statutory penalties available under applicable law;

g)       For pre-judgment and post-judgment interest;

h)       For an award of attorneys' fees, costs and expenses as authorized by applicable law; and

i)       For punitive damages according to proof;

j)       For such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

Respectfully submitted,

*Electronically Filed 10/23/2019*

/s/ Shounak S. Dharap                                 /s/ John W. Billhorn
_____          _____
Shounak S. Dharap                                      John W. Billhorn

THE ARNS LAW FIRM                            BILLHORN LAW FIRM
515 Folsom Street, Third Floor                 53 W. Jackson Blvd., Suite 401
San Francisco, CA 94105                          Chicago, IL 60604
(415) 495-7800                                          312-853-1450

Counsel for Plaintiffs,                                Local Counsel for Plaintiffs,
and all other Plaintiffs similarly situated,    and all other Plaintiffs similarly situated,
known or unknown.                                     known or unknown.